# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:11-cr-230 |
| | JUDGE ALGENON L. MARBLEY |
| v. | Magistrate Judge Vascura |
| JEROME RABINOWITZ, | |
| Defendant. | |

## OPINION & ORDER

This matter is before the Court on Defendant's Motion to Vacate Conviction Based on Newly Discovered Evidence. (ECF No. 135). Defendant also requests a new trial. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I. BACKGROUND

### A. Procedural Background

Defendant Jerome Rabinowitz was charged with mail fraud, money laundering, wire fraud, and making false claims. A Grand Jury returned a 46-count Superseding Indictment on January 31, 2012. (ECF No. 23). Specifically, the federal government alleged Defendant was providing mechanicals parts to the Department of Defense that did not conform to the necessary requirements and specifications of his government contract. (ECF No. 138 at 2).

After a trial in August 2012, a jury found Defendant guilty on 39 of 46 counts. (*Id.* at 4). Defendant was then sentenced to a term of forty-eight months on each count, to be served concurrently; three years post-release supervision; and a restitution and special assessment fine of $520, 924.53. (ECF No. 135 at 2). After sentencing, Defendant filed a notice of appeal, which was denied by the United States Court of Appeals for the Sixth Circuit. (*Id.* at 2-3). Defendant

completed his term of incarceration and began serving supervised release on March 16, 2016. (ECF No. 138 at 4). On December 22, 2017, Defendant filed the instant Motion to Vacate. (ECF No. 135).

## B. Factual Background

During the trial, the prosecution called multiple witnesses who testified about the fabrication or forgery of various traceability documents. (ECF No. 138 at 3). The traceability documents were used by Defendant to prove to the Department of Defense that the parts he was providing conformed to the necessary requirements. (*Id.*) One of the witnesses was Mr. Salvatore Grosso, an employee of AVNET Electronics Marketing. (*Id.*) Mr. Grosso provided parts to Defendant for the government contracts. (ECF No. 135 at 4). Each time Defendant bid on a Department of Defense contract, he needed Mr. Grosso to write a letter to verify the high quality of the parts provided. (ECF No. 138 at 3). Mr. Grosso testified that one letter used by Defendant while bidding on a contract was fabricated. (*Id.*) Mr. Grosso testified that while he had provided similar letters to Defendant on other occasions, the letter in question was not hand-signed by him and the contents of the letter were written in a different manner than his typical letters. (ECF No. 138 at 3).

Defendant argues that the testimony of Mr. Grosso was the critical piece of evidence for the United States developing their theory that Defendant fabricated several traceability documents. (ECF No. 135 at 4). But for Mr. Grosso's testimony, Defendant argues, the prosecution would not have had any evidence of Defendant's intent to defraud the Department of Defense. (*Id.*).

In January 2017, after his release from prison, Defendant coincidentally ran into Mr. Frank Campos, a former colleague, and the two began discussing the trial. (*Id.*). Mr. Campos reminded Defendant that he, Mr. Campos, had witnessed a meeting between Defendant and Mr. Grosso.

(*Id*.). Mr. Campos told Defendant that he remembered Mr. Grosso's giving Defendant a letter with the AVNET heading during the meeting. (*Id*. at 4). In February 2017, Mr. Campos signed an affidavit confirming the meeting between Mr. Grosso, Defendant, and Mr. Campos. (*Id*.). Defendant also hired a private investigator to meet with Mr. Grosso on two occasions. (*Id*.). Although Mr. Grosso did not admit to lying under oath, the private investigator "strongly felt Mr. Grosso was untruthful in his denials." (*Id*.).

Citing Mr. Campos's affidavit, Defendant argues this "new evidence" requires his August 2012 conviction be vacated and that he should be granted a new trial. (*Id*.). Defendant filed a Motion to Vacate on December 22, 2017. (ECF No. 135). In response, the United States filed a Motion to Deny Defendant's Motion on January 11, 2018. (ECF No. 138). The motion is ripe for review.

## II. STANDARD OF REVIEW

Under Rule 33 of the Federal Rules of Criminal Procedure, a court may vacate a judgment and grant a new trial in the interest of justice. The "interest of justice" standard allows for a new trial where substantial legal error has occurred. *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

Before a court can review a Rule 33 motion on the merits, the Defendant must have filed the motion before the Rule 33 filing deadline. For a motion based on newly discovered evidence, the motion must be filed within three years after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(1). A party filing after the three-year deadline may be granted an extension, however, if the court finds that the party failed to act due to "excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). "Excusable neglect" can be caused by inadvertence, mistake, carelessness, or intervening circumstances beyond a party's control. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,

507 U.S. 380, 388 (1993). A court considers five factors when determining what type of neglect is "excusable":

1. The danger of prejudice to the non-moving party,
2. The length of the delay and its potential impact on judicial proceedings,
3. The reason for the delay,
4. Whether the delay was within the reasonable control of the moving party, and
5. Whether the late-filing party acted in good faith.

*Pioneer*, 507 U.S. at 395; *see also Stutson v. United States*, 516 U.S. 193, 196-98 (1996) (applying *Pioneer* factors to criminal cases); *Munoz*, 605 F.3d 359 (applying *Pioneer* factors to a Rule 33 motion). The third *Pioneer* factor, "reason for delay," will always be critical to the inquiry, while the other factors have relevance in a closer case. *Munoz*, 605 F.3d at 372.

If, by the *Pioneer* factors, the Court makes a finding of "excusable neglect," then the Court considers the merits of the motion. To grant a Rule 33 motion on newly discovered evidence, a defendant must prove four factors: 1. The new evidence was discovered after trial; 2. the evidence could not have been discovered earlier with due diligence; 3. the evidence is material and not merely cumulative or impeaching; and 4. the evidence would likely produce acquittal. *United States. v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

### III. LAW AND ANALYSIS

#### A. Timeliness of the Motion

Defendant's Motion was filed based on newly discovered evidence. To be timely, it must have been filed no later than three years after the verdict. Fed. R. Crim. P. 33(b)(1). The jury delivered Defendant's guilty verdicts on August 17, 2012. (ECF No. 138 at 4). Defendant filed his Motion on December 22, 2017, which was five years, four months, and five days after the jury returned its verdict. (*Id.* at 5). Therefore, Defendant must prove that this additional delay beyond the three-year timeline was due to "excusable neglect." Courts apply the *Pioneer* factors to

determine if an untimely motion may nevertheless be accepted because of "excusable neglect." Each factor will be discussed in turn, although in his motion, Defendant only addresses factor number three, "reason for delay."

### 1. *Danger of prejudice to the non-moving party*

The United States argues that Defendant's motion is prejudicial because of the significant lapse of time since the start of Defendant's trial. (ECF No. 138 at 6). This lapse of time can cause memory fading, unavailability of witnesses, and the lowered credibility of witnesses – all detrimental to the prosecution's case. (*Id*.) For his part, Defendant does not address this factor. This factor, having therefore been conceded by the Defendant, militates in favor of the United States.

### 2. *The length of the delay and its potential impact on judicial proceedings*

The Untied States argues that the delay in Defendant's judicial proceedings between the initial trial and any new trial would be detrimental to the efficiency and fairness of the judicial proceedings. (ECF No. 138 at 6). Specifically, the passage of time that leads to memory fading on the part of Defendant, Defendant's witnesses, and the prosecution's witnesses would create an unfair and inefficient second trial. More importantly, a new trial would conflict with an interest in finality. The criminal justice system and the public both have an interest in preserving the finality of judgments. (*Id.* at 7). Re-opening old cases several years later expends valuable judicial resources and affects the public's expectation that the verdict brings the end of the judicial process.

For his part, Defendant does not address this factor. This factor also militates in favor of the Untied States.

### 3. *The reason for the delay*

Defendant focuses his motion on this factor. He argues that the reason for the delay was that he had not had contact with Mr. Campos throughout the trial and his incarceration. (ECF No. 135 at 8). The two individuals had lost touch and Defendant had no contact information for Mr. Campos. (*Id.*). In addition, Defendant had forgotten that Mr. Campos was present for at least one meeting between Defendant and Mr. Grosso. (*Id.*). Finally, Defendant's sentence was four years. (*Id.* at 9). As a result, he necessarily would have needed more than three years to get back in touch with Mr. Campos. (*Id.*). Therefore, Defendant argues the delay should be excused.

In response, the United States argues that Defendant's motion not only fails to articulate any grounds for a finding of excusable neglect but show the opposite: actual fault for the delay. (ECF No. 138 at 7). Defendant knew that Mr. Grosso was a witness at the trial, and the letter in question was presented as evidence. (*Id.*). In fact, the letter was known to the parties in advance of the trial: the letter was provided in discovery to Defendant on May 9, 2012. (*Id.* at 3). If Defendant truly believed that Mr. Grosso's testimony was inaccurate, Defendant had the opportunity to conduct his own due diligence and present evidence from Mr. Campos to rebut the prosecution's evidence during trial, or at any time during the three-year time limit for newly-discovered evidence. (*Id.* at 7). Despite believing that Mr. Grosso's testimony was vital to the prosecution's case, Defendant failed to act upon the information he had. (*Id.* at 8).

### 4. *Whether the delay was within the reasonable control of the moving party*

The United States argues Defendant was in control not only of the delay but also the information that is the "newly discovered evidence." (ECF No. 138 at 8). Defendant had the opportunity to consider the letter in question while preparing for trial and to seek evidence from Mr. Campos to the contrary. In addition, his attorney had the opportunity to cross-examine Mr.

Grosso and challenge the cover letter at trial. (*Id.*). After the trial, Defendant had 14 days under Rule 33(b)(2) and three years under Rule 33(b)(1) to make a timely motion to vacate. (*Id.*). Finally, because Defendant was personally present at the meeting with Mr. Grosso and Mr. Campos, Defendant was in possession of the evidence. The government argues this demonstrates Defendant's control over the delay in filing.

In addition, the United States argues that Defendant lost his opportunity to claim this delay as excusable neglect when Defendant's counsel waited almost one year between the discovery of the "new evidence" and the filing of the motion. (*Id.* at 8). The motion was filed in December 2017, although the meeting happened in January 2017. (*Id.*). The United States points to *Munoz* where the court held the clients accountable for the acts and omissions of their attorney. (*Id.*). The *Munoz* court specifically rejected the idea that it would be inappropriate to penalize clients for the actions of their attorney, because such a rule would be inconsistent with a system of representative litigation. *Munoz*, 605 F.3d at 368. Therefore, the United States argues that the delay – both in filing the motion and Defendant's failure to act on information he had – is not excusable neglect.

For his part, Defendant does not address this factor, which also militates in favor of the United States.

5. *Whether the late filing party acted in good faith*

According to the United States, Defendant has filed a motion about an event he participated in nine years ago, and nearly a year after evidence of the meeting resurfaced. (ECF No. 138 at 9). The United States argues this is "antithetical to good faith." (ECF No. 138 at 9). In addition, the Unite States argues that Defendant has significantly overstated the significance of Mr. Campos's statement and the importance of Mr. Grosso's testimony in his trial. (*Id.*). The United States argues that Defendant was not acting in good faith while bidding on Department of Defense contracts and

is also not acting in good faith by submitting this motion. (*Id.*). Defendant does not address this factor.

### B. Analysis of the *Pioneer* factors

The *Pioneer* factors do not all carry equal weight. The "reason for delay" factor must have "the greatest import." *Munoz*, 605 F.3d at 372 (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)).

By allowing courts to accept late filings due to excusable neglect, Congress contemplated that such an excuse might be found in cases of "inadvertence, mistake, … carelessness, … [or] intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388. Defendant's delay in finding Mr. Campos and gaining his testimony could be seen as carelessness. The analysis does not, however, end there. Defendant and his attorney did not file the motion until almost a year after discovering the evidence. With a three-year timeline on filing a Rule 33(b)(1) motion, counsel should have known the impact in waiting one year past the statutory deadline to file the motion – in addition to almost another year after Defendant met with Mr. Campos.

Defendant's counsel has been representing him since 2011, including at trial, and could have seen the effect of Mr. Grosso's testimony. Although the *Munoz* Court acknowledged that Defendant should be held accountable for the actions of counsel, the court also noted that the "your lawyer, your fault" principle should not be applied as stringently in the criminal context, because legal traditions reflect a "certain solicitude for [a defendant's] rights." *Munoz,* 605 F.3d at 369. Mr. Campos's affidavit was signed in February 2017. Thereafter, it would be counsel's responsibility to properly research and timely file the motion. The "district judge is in the best position to know how long…counsel would require to research and to prepare a new-trial motion under the circumstances. *Munoz*, 605 F.3d at 372. The traditional "solicitude" for a defendant's

rights in criminal cases allows this Court to excuse Defendant for his counsel's failure to act. Counsel inexcusably delayed by waiting almost one year to file Defendant's Motion to Vacate, so Defendant will not be held responsible for this misstep by counsel.

Because *Munoz* encourages solicitude for a defendant's rights in a criminal case, the delay of counsel in filing the instant motion will not be held against Defendant. This Court finds that Defendant has demonstrated "excusable neglect" and so is permitted to file the Rule 33(b)(1) Motion to Vacate. As a result, this Court will next consider the merits of the motion.

### C. Merits of the Motion

The *O'Dell* factors must be satisfied to grant a Rule 33 motion on newly discovered evidence. The four *O'Dell* factors are: 1. The new evidence was discovered after trial; 2. the evidence could not have been discovered earlier with due diligence; 3. the evidence is material and not merely cumulative or impeaching; and 4. the evidence would likely produce acquittal. *United States. v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986). A new trial is granted only if all four factors are met.

#### 1. *The new evidence was discovered after trial*

The first *O'Dell* factor is satisfied in this case. For matters addressed at trial, if a new witness's testimony later becomes available, it is considered not to be new evidence if the defendant knew of the general tenor of that evidence during trial. *United States. v. Booker*, 2001 WL 1321536 at *4 (6th Cir. 2001) (citing *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994)). Here, Defendant is introducing a new witness, and he did not know of the evidence until after the trial, even though he was a party to the meeting with Mr. Grosso and Mr. Campos.

Although it could be argued that Defendant *should have known* the general tenor of the evidence because he was a party to the meeting with Mr. Grosso and Mr. Campos, the passage of

time invariably leads to memories fading, and it would be unduly harsh to punish Defendant for failing to recollect this one meeting. Defendant had a chance encounter with Mr. Campos, where he realized Mr. Campos was a third-party witness to a transaction between Defendant and Mr. Grosso regarding AVNET. (*Id.*). Because this new evidence was discovered after trial, the first *O'Dell* factor is satisfied.

2. *The evidence could not have been discovered earlier with due diligence*

The second *O'Dell* factor is also satisfied in Defendant's case. Defendant did not know about the alleged perjury of the witness until several years after his trial had ended. (ECF No. 135 at 9). If Defendant had no recollection of the encounter between Defendant, Mr. Campos and Mr. Grosso, due diligence would not have been able to produce evidence that Defendant himself did not remember existed.

By contrast, if Defendant could recall the meeting between the three men, then the evidence could have been discovered with due diligence, as in *Booker*. *Booker*, 2001 WL 1321536 at *5. There, the defendant knew about the alleged perjury of a witness at trial. Booker's counsel also cross-examined the witness and brought up at sidebar the witness's alleged. *Id*. Only after trial did Booker bring in the third-party witness, even though the she knew about the witness the whole time. *Id*. *Booker* is distinguishable from this case, however, because whereas Booker's counsel sat on the allegations of perjury that were previously known, the memory of the chance encounter between the three men was only newly presented to Defendant. The second *O'Dell* factor is also satisfied.

3. *The evidence is material and not merely cumulative or impeaching*

The third *O'Dell* factor is not met because Mr. Campos's testimony is impeaching and not material. Impeaching evidence is circumstantial evidence introduced to demonstrate that a witness

is not telling the truth, is mistaken, or offered incomplete testimony. The evidence here is impeaching because Mr. Campos's testimony demonstrates that Mr. Grosso possibly perjured himself by stating that he never gave Defendant the AVNET letter without a signature. (ECF No. 135-1 at 2). Because the "testimony was offered by [the defendant] merely to impeach [the witness], and the…*O'Dell* requirement[s] explicitly disallow evidence that is meant merely to impeach from qualifying as new evidence," Defendant fails to meet the third *O'Dell* factor. *Booker*, at *5.

In addition, Mr. Campos's testimony is not material. Rather, his testimony is vague and inconclusive about the letter he saw Mr. Grosso give Defendant. In the affidavit, Mr. Campos testifies that he "recall[s] seeing Mr. Grosso give [Defendant] a letter that appeared to describe the authentication for parts that J & W receive from AVNET." (ECF No. 135-1 at 2). Simply because Mr. Campos saw Mr. Grosso give *a* letter that *appeared* to describe business dealings between Mr. Grosso and Defendant does not lead to the conclusion that it was the same letter that was in question during the trial. In fact, the United States pointed out that Mr. Grosso testified that he had provided verifiable letters to Defendant on earlier occasions. (ECF No. 138 at 3). There is no conclusive evidence that Mr. Campos observed Mr. Grosso provide the fraudulent letter that was the source of Mr. Grosso's testimony during trial. Mr. Grosso's testimony cannot be deemed material based on such inconclusive evidence. Therefore, Defendant fails to satisfy the fourth *O'Dell* factor.

### 4. *The evidence would likely produce acquittal*

Defendant also fails to satisfy the fourth *O'Dell* factor due to the inconclusive verification of the specific letter in Mr. Campos's testimony. Even if Mr. Campos did witness Mr. Grosso give Defendant the letter in question at trial, such evidence is not significant enough to acquit Defendant

of the 39 charges on which the jury convicted. It is the Defendant's view that Mr. Grosso's testimony is the only evidence the prosecution provided to prove Defendant's intent to defraud, and without such testimony a reasonable juror could not have reached the conclusion that Defendant acted intentionally. (ECF No. 135 at 4, 8). However, the prosecution called 43 witnesses during the trial and introduced nearly 1,000 exhibits to prove Defendant's guilt. (ECF No. 138 at 2). Even without Mr. Grosso's testimony, the jury could have reasonably convicted Defendant on the basis of the other evidence presented by the prosecution. Therefore, Defendant fails to satisfy the fourth *O'Dell* requirement.

In conclusion, Defendant has failed to prove all four elements of the "newly discovered evidence" analysis under a Rule 33 Motion.

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Vacate is **DENIED.** As a result, the United States' Motion to Deny (ECF No 138) is **GRANTED.**

**IT IS SO ORDERED.**

           **s/ Algenon L. Marbley**

**DATED:  March 4, 2019**        **ALGENON L. MARBLEY**
                                                       **UNITED STATES DISTRICT JUDGE**